IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MELISSA DAVIS                                                                    PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:13cv557-DPJ-FKB

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY                                                         DEFENDANT

### REPORT AND RECOMMENDATION

Melissa Davis brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration,  Presently before the Court are Davis's motion for summary judgment  [12] and the Commissioner's motion to affirm [15]. Having considered the memoranda of the parties and the administrative record, the undersigned recommends that Davis's motion be denied and that the Commissioner's motion be granted.

### I.  Procedural History

Davis was born on May 18, 1967, and was 45 years of age at the time of the ALJ's decision.  She has a twelfth grade education and past relevant work experience as a certified nursing assistant.  She alleges disability due to low back pain and depression. Davis filed for disability insurance benefits and supplemental security income on March 12, 2010, alleging an onset date of June 20, 2009.  Her applications were denied initially and on reconsideration, and she requested and was granted a hearing before an administrative law judge (ALJ).   The ALJ issued a decision finding that Davis is not disabled.  The Appeals Council denied review, thereby making the decision of the ALJ the

final decision of the Commissioner.  Davis then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

Davis's medical history includes a 2006 decompression and fusion performed at L5-S1 after she sustained an injury to her lower spine.  Since her surgery, Davis has continued to complain of low back pain.  An MRI conducted on January 30, 2009, indicated no spinal stenosis or disc herniation at L5-S1.  R. 336.[1]  There was mild facet arthrosis and minimal disc bulging at L3-4 and L4-5 but no evidence of spinal stenosis at these levels.  *Id.*  Thereafter, she began treatment at the UMC pain clinic, where Dr. Ike Eriator treated her with a nerve root block in March of 2009 and a facet block in May of 2010.  R. 326-27, 333-34.  Davis reported only brief relief from these injections.  A CT scan performed in September of 2009 indicated a solid fusion, and having reviewed the CT scan, Dr. Ashraf Ragab stated that he did "not see any problem with her spine that could explain her pain."  R. 311.  Dr. Eriator administered an epidural steroid injection in August of 2011, and in September of 2011, he performed a neuroplasty.  R. 431-32, 424-25.  In 2012, Davis was diagnosed with bilateral patellofemoral pain syndrome and bursitis, for which she was treated with injections and physical therapy. R. 422-23.

The medical record indicates a history of depression, for which Davis has been treated with Effexor.  In June of 2009, she presented at Weems with complaints that her medication was no longer effective.  R. 365-66.  She also reported thoughts of "not

---

[1]Citations are to the Social Security Administration's pagination of the administrative record, not the CM/ECF pagination.

wanting to be here." *Id.* Weems referred her to St. Dominic for inpatient treatment.  Upon admission at St. Dominic, she reported suicidal ideations, severe irritability, and visual hallucinations.  R. 278.  Mental status exam revealed a Global Assessment of Functioning (GAF) of 26.  R. 279.  She was treated with an increased dosage of Effexor and was released after a week.  Discharge diagnosis was major depressive disorder, recurrent, and a GAF of 55.  R. 277.

Davis continued to have difficulties with depression after her discharge, and two weeks later she was taken to the emergency room after she ingested 18 Lortabs and 17 Flexeril tablets in a suicide attempt.  R. 296.  She was treated with a gastric lavage and released.  R. 299.  Thereafter she was treated regularly and frequently at Weems, where Seroquel was prescribed in addition to Effexor.  By September of 2009, she had made some improvement on Effexor and Seroquel.  R. 349.  Notes thereafter indicate that she was making progress.   On March 22, 2010, she was noted to be somewhat improved, although her crying spells were continuing, and she was experiencing fewer auditory hallucinations and no suicidal ideations.  R.  346.  On mental status exam she was neat, calm, and oriented.  *Id.*  Affect was restricted, memory was intact, insight fair, judgment fair, and intelligence average.  *Id.*  She was instructed to continue on Effexor and Seroquel.  *Id.*  Her last documented visit to Weems was on May 21, 2010.  At this visit, Davis reported that her mood had been relatively euthymic and stable and that she was sleeping well.  R. 343-44.  She was alert, calm, cooperative, and fully oriented, and she had had no recent delusions, hallucinations, or suicidal thoughts.  *Id.*  Mental status exam revealed that motor activity was slightly decreased, affect was restricted, and thought

process was coherent.  *Id.*  She was to continue on Effexor and Seroquel and be seen monthly for psychotherapy.  *Id.*

Linda Youngblood was Davis's case manager at Weems.  On April 6, 2010, Youngbood completed a mental health questionnaire.  Youngblood stated that Davis was being treated with Effexor and Seroquel and that her compliance with treatment was good.  R.  316.  She rated as "fair" Davis's ability to use judgment and as "poor" her ability to deal with the public, function independently, and maintain attention and concentration.  R.  317.   Youngblood rated as "unknown" Davis's ability to follow work rules, relate to co-workers, interact with supervisors, and deal with work stresses.  *Id.*  In support of these opinions, she stated that Davis has anxiety in public, poor stress management skills, poor concentration and attention, and problems staying on task.  *Id.*  On the issue of job instructions, Youngblood indicated that Davis's ability to understand, remember, and carry out job instructions, even simple ones, is poor.  *Id.*  In support of this opinion, she cited Davis's poor concentration and memory and that she had experienced suicidal ideations in the past.  *Id.*  Finally, Youngblood opined that Davis has a fair ability to maintain personal appearance and a poor ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  *Id.*  In support of these opinions, Youngblood stated that Davis was easily upset, had difficulties coping with change, had poor stress management skills, and that Davis had "tried to comitt [sic] suicide several times" when things did not turn out as she expected.  *Id.*

Jan Boggs, Ph.D., performed a consultative mental status examination on Davis on May 20, 2010.  At the exam, Davis reported problems from pain and depression.  R. 339.

4

She rated her pain at 8.5 out of 10 on a bad day and 7 on the day of the exam.  *Id.*  Davis

stated that she had not driven in a year because of pain.  R. 340.  She stated that she

experienced crying spells two to three times a day and reported seeing shadows and

hearing her name.  *Id.*  Davis was tearful at the exam and indicated that she was

distraught over her inability to do things for herself and her children.  *Id.*  She claimed that

she had experienced suicidal thoughts as recently as two weeks earlier and had tried to

cut herself on one occasion.  *Id.*  Examination revealed her to be of average intelligence

with fair remote recall.  *Id.*  Dr. Boggs observed that Davis proceeded slowly during the

exam, making some tasks more difficult.  *Id.*  She had difficulty with grocery store

arithmetic.  *Id.*  Dr. Boggs stated that some of Davis's difficulties during the exam may

have been the result of distraction due to pain.  R. 340-41.  Dr. Boggs's impression was

depressive disorder, NOS, and dysthymia.  R. 341.  Dr. Boggs stated that Davis would be

able to handle funds.  *Id.*  He described Davis as depressed and in pain, with any

improvement in her mental status being largely dependent upon resolution of her back

pain.  *Id.*

Dr. Glenda Scallorn, a non-examining consultant, completed a psychiatric review

technique form on June 15, 2010.  Dr. Scallorn opined that Davis had moderate limitations

in daily living, social functioning, and concentration, persistence, or pace, and that she

had had no episodes of decompensation (the "B" criteria).  R. 390.  Dr. Scallorn also

completed an assessment form of Davis's mental RFC, in which she stated that Davis

could perform routine repetitive tasks for two-hour periods of time in an eight-hour day,

that she was capable of appropriate interactions with coworkers and supervisors, and

would be able to adapt to routine work changes.  R. 396.  She further opined that Davis could complete a normal work week without excessive interference from psychologically-based symptoms.  *Id.*

At the hearing, Davis testified as follows.  She lives with her children and grandchildren.  R. 34.  She suffers from back pain approximately 75 percent of the time and rates her pain at a level of seven.  R. 39.  Pain medication will reduce her pain to about a six, but this effect lasts only for an hour or an hour and a half.  R. 39-40.  On a typical day, Davis gets up about eight or nine in the morning.  R. 44.  She tries to watch television some but has trouble focusing because of her pain.  R.  44-45.  She does not go out to shop and engages in no social activities.  R. 38, 45.  Davis performs no household chores and needs assistance to put her shoes on and to get in and out of the bathtub.  R. 47, 40.  She also suffers from pain in both knees and in her right hip.  R. 49.  She suffers from depression and memory problems, and she experiences crying spells at times.  R. 38-39.  At the time of the hearing, she had not been seen at Weems recently and was on no psychotropic medication.  R. 48.

A vocational expert (VE), Debbie Ann Baker-Dean, testified at the hearing.  The ALJ posed the following hypothetical to the VE:  A younger individual with a high school education and past work experience as a nursing assistant, who can perform light work but would need the option of sitting briefly (no more than five minutes) after standing or walking for 30 minutes, would need to stand and move about briefly after sitting for thirty minutes, can never climb ladders, ropes, or scaffolds, and can only occasionally climb stairs or ramps, balance, stoop, crouch, kneel, or crawl, and is limited to performing

6

simple, routine, repetitive tasks.  R. 53.  The VE testified that such an individual could not

perform the job of nursing assistant but could perform the alternative jobs of silverware

wrapper, mail sorter, and textile sorter, and that these jobs exist in significant numbers in

the national economy.   R. 53-54.  The ALJ posed a second hypothetical, adding that the

individual could have only occasional interaction with the public and with co-workers.  R.

54.  The VE responded that this individual could perform only the job of textile sorter.  *Id.*

In a third hypothetical, the ALJ asked the VE to consider a person with the characteristics

set out in the first hypothetical, but with the additional limitation that she was unable to

sustain work for eight hours a day, five days a week.  R. 55.  The VE testified that there

would be no work for the individual described in the third hypothetical.  *Id.*

### III.  The Decision of the ALJ and Analysis

In her decision, the ALJ worked through the familiar sequential evaluation process

for determining disability.[2]  She found that Davis has the severe impairments of obesity,

---

[2]In evaluating a disability claim, the ALJ is to engage in a five-step sequential
process, making the following determinations:

(1)     whether the claimant is presently engaging in substantial gainful activity (if
so, a finding of "not disabled" is made);

(2)     whether the claimant has a severe impairment (if not, a finding of "not
disabled" is made);

(3)     whether the impairment is listed, or equivalent to an impairment listed, in 20
C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to
be disabled);

(4)     whether the impairment prevents the claimant from doing past relevant work
(if not, the claimant is found to be not disabled); and

(5)     whether the impairment prevents the claimant from performing any other

lumbar degenerative disc disease status post fusion with diagnosis of failed back syndrome, and depression.  At step three, the ALJ determined that Davis does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 21.  The ALJ found that Davis has the residual functional capacity to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and  416.967(b), with the following limitations: She must have the option to walk briefly (no more than five minutes) after sitting for 30 minutes and to sit briefly after standing or walking for 30 minutes; she should never climb ladders, ropes, or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs; and she is limited to performing simple, routine, repetitive tasks.

In making this determination of Davis's RFC, the ALJ stated that she gave great weight to the opinion of Dr. Scallorn, some weight to the opinion of Dr. Boggs, and limited weight to the opinion of Ms. Youngblood.  At step four, the ALJ found that Davis is not capable of performing her past relevant work.  At the final step of the analysis, the ALJ, relying upon the testimony of the VE, determined that Davis can perform the jobs of silverware wrapper, mail sorter, and textile sorter and that these jobs exist in significant numbers. She therefore determined that Davis is not disabled.

---

substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[3]  In her memoranda, Davis makes two arguments: (1) that the ALJ failed to give due consideration to the opinion of Linda Youngblood, and (2) that the ALJ failed to resolve a conflict between the testimony of the VE and the *Dictionary of Occupational Titles* (DOT). and, therefore, failed to establish the existence of other work that Davis can perform.

The SSA regulations distinguish between "acceptable medical sources" and sources which are not "acceptable medical sources" ("other medical sources"). Acceptable medical sources include physicians, psychologists, optometrists, podiatrists and speech pathologists.  20 C.F.R. §§ 404.1513(a) and 416.913(a).  Only an acceptable medical source may (1) establish the existence of a medically determinable impairment; (2) give a medical opinion; and (3) be considered as a treating source.  SSR 06-03p, 2006 WL 2329939, at *2.  However, evidence from other sources (non-acceptable sources) can be used to show the *severity* of an impairment and how it affects the individual's ability to

---

[3] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ."  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).  If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed,  *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

function.  *Id.*  Davis concedes that Ms. Youngblood, a case manager, is not an acceptable medical source.

SSR 06-3p discusses the manner in which other sources are to be evaluated.  The ruling emphasizes that all relevant evidence, including evidence from other sources, is to be considered and that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 WL 2329939, at *6.

The ALJ's explanation for the limited weight given to Ms. Youngblood's opinion was that it was inconsistent with the other evidence of record.  Davis argues that in failing to specify the inconsistent evidence, the ALJ failed to fulfill the requirements of SSR 06-03p. The undersigned disagrees.  The ALJ explained the weight given to the opinion of Ms. Youngblood and stated the reason for giving it limited weight.  Moreover, it is apparent from the ALJ's discussion what other evidence of record was inconsistent with Ms. Youngblood's opinion.  That evidence included the opinion of Dr. Scallorn and Davis's treatment records from Weems, which showed significant improvement after several months of treatment with Effexor and Seroquel.[4]

Davis's remaining argument concerning Ms. Youngblood's opinion is based upon the following section of SSR 06-03p:

---

[4]It is also noteworthy that Youngblood's statement that Davis had attempted suicide several times is inconsistent with the record, which indicates only a single attempt.

Although the factors in 20 C.F.R. 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." . . .   These factors include:

> How long the source has known and how frequently the source has seen the individual;
>
> How consistent the opinion is with other evidence;
>
> The degree to which the source presents relevant evidence to support an opinion;
>
> How well the source explains the opinion;
>
> Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
>
> Any other factors that tend to support or refute the opinion.

2006 WL 2329939, at *4.  Davis argues that the ALJ committed reversible error in failing to address each of these factors.

Davis's position is supported by neither the regulation nor Fifth Circuit law.  The regulation states that these factors "can" be used to evaluate the opinion, not that they must each be specifically discussed by the ALJ.  The Fifth Circuit rejected a similar argument in *Thibodeaux v. Astrue,* 324 Fed. Appx. 440 (5th Cir. 2009). In that case, the ALJ assigned little or no weight to the opinion of the claimant's therapist, a non-acceptable medical source.  The plaintiff argued that the ALJ had failed to follow the "treating physician rule" and had therefore erred by failing to analyze the opinion of the therapist using the criteria set forth in 20 C.F.R. § 404.1527(d)(2).  The court rejected this argument, noting that the opinion of a treating non-acceptable medical source is not entitled to the deference owed to the opinion of a treating acceptable medical source.

*Thibodeaux*, 324 Fed. Appx. at 445. While Davis does not couch her argument in terms of the treating physician rule, she is essentially arguing that the ALJ was required to perform the analysis required by that doctrine.  *Thibodeaux* indicates that there is no such requirement.

Plaintiff's final argument concerns the ALJ's finding that there was other work available that Davis can perform.  Social Security Ruling 00-4P, 2000 WL 1898704, provides that in order for an ALJ to rely upon VE testimony which conflicts with information in the DOT, the ALJ must identify the conflict and offer a reasonable explanation for the conflict.  Because the ALJ failed to identify the areas of conflict between the VE's opinion and the DOT and failed to offer a reasonable explanation for the conflict, so Plaintiff contends, the ALJ erred as a matter of law.

The VE identified three jobs existing in significant numbers that a person with Davis's RFC could perform: Silverware wrapper (DOT #318.687-018), mail sorter (DOT #209.687-026), and textile sorter (DOT #753.587-010).  The DOT identifies the required reasoning development level of silverware wrapper and textile sorter as level two; the job of mail sorter is assigned a reasoning level of three.   Davis argues that a conflict exists between the VE's testimony and the DOT, in that the VE's hypothetical presumed the ability to perform only simple, routine, repetitive tasks, and that jobs at a reasoning level above level one are incompatible with this limitation.

The DOT describes the three reasoning development levels as follows:

LEVEL 3: Apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.

LEVEL 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

LEVEL 1: Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*Dictionary of Occupational Titles*, App. C (rev. 4th ed. 1991).  In the opinion of the undersigned, Plaintiff has failed to establish any direct conflict.  It does not follow from the descriptions of level two and level three jobs that the work itself is complex. *See Meissl v. Barnhart*, 403 F.Supp.2d 981 (C.D. Cal. 2005) (providing detailed analysis of the reasoning levels and finding that a limitation to simple tasks is compatible with the ability to perform a job with a reasoning level of two).  Numerous courts in this circuit have reached a similar conclusion.  *See, e.g., Ealy v. Colvin*, 2014 WL 3928193 at *3 (S.D. Miss. Aug. 12, 2014) (finding limitation to simple and routine, repetitive tasks consistent with ability to perform job with a reasoning level of two); *Smith v. Colvin*, 2014 WL 1407437 at *6 (N.D. Tex. March 24, 2014) (noting that the weight of authority supports the determination that a limitation to simple, routine, repetitive tasks is consistent with the ability to perform jobs with a reasoning level of two or three) (citing *Coleman v. Colvin*, 2013 WL 5353416, at *4 (N.D. Tex. Sept. 25, 2013)); *Melton v. Astrue*, 2012 WL 1004786, at *3-4 (N.D. Miss. Mar. 26, 2012) (limitation to "simple, routine, repetitive tasks involving only simple work related decisions" consistent with performance of work with a reasoning level of two); *Fletcher v. Astrue*, 2010 WL 1644877, at *4 (N.D. Tex. Mar. 31, 2010) (observing that "[c]ourts have acknowledged that the ability to perform non-complex work is consistent with reasoning level two"); *Gaspard v. Soc. Sec. Admin. Com'r*, 609

F.Supp.2d 607, 617 & n. 22 (E.D. Tex. 2009) (collecting cases and finding that a limitation to simple and repetitive tasks is not necessarily inconsistent with a reasoning level of two).

As the Fifth Circuit has stated, "[T]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and attributes and skills needed."  *Fields v. Brown*, 805 F.2d 1168, 1170 (5th Cir. 1986).  The ALJ was entitled to rely upon the VE's opinion that Plaintiff could perform the jobs of silverware wrapper, mail sorter and textile sorter, notwithstanding that she was limited to performing simple, routine, repetitive tasks.

### IV.  Conclusion

The undersigned concludes that the ALJ's decision was supported by substantial evidence and that no reversible errors of law were committed.  Accordingly, the undersigned recommends that Plaintiff's motion be denied, that Defendant's motion be granted, and that the decision of the Commissioner be affirmed.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions

accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 27th day of January, 2015.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE

15